UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- Chapter 7

In Re:

    LUIGI ROSABIANCA,                        Case No. 1-20-40385-ESS

                           Debtor.

----------------------------------------------------------------------

CARMELO ROSABIANCA and
VIVIAN ROSABIANCA,

                                      Adversary Proceeding

                Plaintiffs,         No. 20-01030

          -against-

LUIGI ROSABIANCA,

                Defendant.

----------------------------------------------------------------------


**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>PLAINTIFFS' MOTION FOR DEFAULT JUDGEMENT</u>**



*On the Brief:*
Steven Amshen, Esq.


                           **PETROFF AMSHEN LLP**

             By:    <u>*/s/ Steven Amshen*</u>
                     Steven Amshen, Esq.
                     1795 Coney Island Avenue, Third Floor
                     Brooklyn, New York 11230
                     (718) 336-4200
                     <u>samshen@lawpetroff.com</u>
                     *Attorneys for Carmelo Rosabianca &*
                     *Vivien Rosabianca.*

## PRELIMINARY STATEMENT

Plaintiff moves the Court, pursuant to Federal Rule of Civil Procedure 55(b), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7055, to enter default judgment in favor of Plaintiffs as to and against Defendant on the grounds that Defendant failed to answer or otherwise defend against the complaint.

## FACTUAL AND PROCEDURAL HISTORY

### a.  Adversary Proceeding

On March 12, 2020, Plaintiffs Carmelo Rosabianca and Vivian Rosabianca ("Plaintiffs") commenced this adversary proceedings against their son, Defendant Luigi Rosabianca ("Defendant") alleging a cause of action of fraud against Defendant in connection with a certain note and mortgage recorded against Plaintiffs' property located at 3242 Benson Avenue, Brooklyn, New York 11214 ( the "Benson Property") *See* **Exhibit A.**

On March 17, 2020, service of the Summons and Complaint was completed upon Mr. Luigi Rosabianca, pursuant to Federal Rule of Bankruptcy Procedure 7004(a)(1) and Federal Rule of Civil Procedure 4(e)(2). *See* **Exhibit B.**

Defendant Luigi Rosabianca's answer was due on April 13, 2020. However, upon Defendant's request on May 11, 2020, (**Exhibit C**) the Court extended his time to answer until June 1, 2020. *See* **Exhibit D.**

Yet, Defendant failed to file or otherwise serve an answer. As a result, on June 23, 2020, the Court noted Defendant's default on the record. *See* **Exhibit E.**

b. **Underling Chapter 7 Bankruptcy**

On May 14, 2008, Defendant obtained a mortgage loan from Emigrant Mortgage Company Inc. (hereinafter "Emigrant") for a condominium located at 55 Wall Street, Unit 540, New York, New York (the "Manhattan Property"), in the amount of $1,760,000.00. **Exhibit F.**

Unbeknownst to the Plaintiffs, Defendant also agreed to collateralize Plaintiffs' home, located at 2342 Benson Avenue, Brooklyn, New York 11214 (the "Benson Property"), as part of the loan, using durable powers of attorney fraudulently obtained from the Plaintiffs via a series of misrepresentations regarding the purpose of said instruments. *See* **Exhibit F.**

At the closing, Defendant represented himself, his parents as attorney-in-fact, and acted as title closer and settlement agent at the same time.

Defendant's power to act as Plaintiffs' "attorney-in-fact" and pledging their home and primary residence as additional collateral for the Emigrant loan was allegedly derived from fraudulently obtained durable power(s) of attorney, purportedly executed on April 30, 2008. *See* **Exhibits G** and **H.**

Defendant further intentionally and deceptively failed to record the Emigrant mortgage for nearly four (4) years despite being required to do so as the title closer and settlement agent for the closing of the property.

 On or about, August 1, 2011, defendant allegedly stopped making payments on Emigrant's mortgage loan.

As a result, on or about March 26, 2014, Emigrant filed a Summons and Complaint in the Supreme Court of the State of New York, County of New York, in an action entitled *Emigrant Bank, as successor-by-merger with Emigrant Savings Bank – Manhattan v. Luigi Rosabianca, et*

*al.*, Index No. 850136/2014, seeking foreclosure on both the Manhattan Property, and the Plaintiffs' home and primary residence — *i.e.*, the Benson Property (the "Foreclosure Action").

Until the Foreclosure Action was commenced in March 2014, Plaintiffs had no knowledge of the Emigrant mortgage loan which was encumbering the Benson Property or that their home had been pledged as collateral by Defendant.

On or about March 20, 2015, both Plaintiffs revoked the powers of attorney that were allegedly issued to Luigi Rosabianca on April 30, 2008. *See* **Exhibit I** and **Exhibit J.**

Ultimately, after years of additional litigation, a final Judgment of Foreclosure and Sale ("JFS"), dated October 28, 2019 and entered with the Clerk of the Court of New York County on November 7, 2019, was procured by Emigrant in the Foreclosure Action in the amount of $2,605,080.69 plus interest and costs.

As a result of the aforementioned JFS, Emigrant issued Notice(s) of Sale on December 18, 2019, pursuant to which the Manhattan Property was to be sold via public auction on January 22, 2020, and the Benson Property was to be sold via public auction on January 23, 2020.

On January 22, 2020, Luigi Rosabianca filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

On July 7, 2020, Emigrant Bank filed a motion for relief from stay with respect to the property located at 55 Wall Street, #540, New York, NY 10005 (the "Manhattan Property") in the Debtor's underlying bankruptcy case (the "Stay Relief Motion").

On August 7, 2020, the Plaintiffs filed a letter requesting mediation with the Debtor and Emigrant Bank, on grounds, among others, that the Debtor obtained a mortgage loan from Emigrant Bank for the Manhattan Property and fraudulently used the Benson Property as collateral for the mortgage loan. *See* **Exhibit K.**

On August 11, 2020, the Court held a hearing on the Stay Relief Motion, wherein Emigrant Bank and the Debtor appeared and were heard, and the Debtor and Emigrant Bank consented to mediation with the Rosabiancas with respect to the Benson Property.

On August 13, 2020, the Court referred the dispute to mediation. *See* **Exhibit L.**

## LEGAL ARGUMENT

I.    **Plaintiffs Are Entitled To A Default Judgment Against Defendant.**

   a.  **Standard**

Pursuant to Federal Rule of Civil Procedure 55(a) made applicable in bankruptcy proceedings by Federal Rule Bankruptcy Procedure 7055, a plaintiff may obtain a default judgment against a defendant if said defendant fails to appear or plead in a timely manner. *See* Fed. R. Civ. P. 55(a), Fed. R. Bankr. P. 7055.

Federal Rule of Civil Procedure 55 provides for a two-step process by which a party may obtain a default judgment. "First, if a party has failed to plead or otherwise defend against an action, the clerk of court must enter a certificate of default by making a notation on the record. *See* Fed. R. Civ. P. 55(a). Second, after this entry of default, if the defaulting party still fails to appear or move to set aside the default, the court may enter a default judgment if the complaint is well-pleaded. *See* Fed. R. Civ. P. 55(b)." *Avail 1 LLC v. Latief,* 2020 U.S. Dist. LEXIS 148125, at *4 (E.D.N.Y. Aug. 14, 2020).

"Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true…. However, [it] is well established that a party is not entitled to default judgment as a matter of right; rather the entry of a default judgment is entrusted to the sound discretion of the court." *Gustavia Home, LLC v. Alvarez,* No. 16-CV-06633 (DRH) (SIL), 2017 U.S. Dist. LEXIS 86016, at *5 (E.D.N.Y. June 2, 2017).

Before entering a default judgment, the Court must consider (1) the adequacy of the plaintiff's service of process, and proof of service of the summons and complaint on the non-appearing defendant; *J & J Sports Prods. v. Dowling,* No. 18 CV 5086 (MKB)(RML),2019 U.S. Dist. LEXIS 134713, at *4-5 (E.D.N.Y. Aug. 7, 2019); (2) proof of default; and (3) that plaintiff demonstrated "those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.,* 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (internal citation omitted). As detailed *infra*, each of these requisite elements have been satisfied here.

### b.  Service

 Federal Rules of Bankruptcy Procedure States that "Fed. R. Civ. P. applies in adversary proceedings." Fed. R. Bankr. P. 7004(a)(1).

Under the Federal Rules of Civil Procedure, a process server may properly serve an individual defendant either "pursuant to the law of the state in which the district court is located, or in which service is effected…" (Fed. R. Civ. P. 4(e)(1)) or by "delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(B).

In New York, under CPLR § 308(2), a process server may properly serve a defendant:

> "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise,

that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later; service shall be complete ten days after such filing; proof of service shall identify such person of suitable age and discretion and state the date, time and place of service, except in matrimonial actions where service hereunder may be made pursuant to an order made in accordance with the provisions of subdivision a of section two hundred thirty-two of the domestic relations law."

In the present matter, the Affidavit of Service of John Leong, a licensed process server, avers that a copy of the Summons and Verified Complaint was served upon Defendant by delivering said documents to a brother of the Defendant, Santo Rosanbianca, an individual of suitable age and description on March 16, 2020. Mr. Leong further swears that he mailed a copy of the Summons and Verified Complaint to Defendant on March 17, 2020. *See* ECF Doc. No. 3-4. Your affirmant's office filed said Affidavit of Service with the United States Bankruptcy Court Eastern District of New York on April 17, 2020. *Id*.

In deciding whether service was proper, Federal Courts looks to the law of the state in which the District Court is located, or in which service is made. *See* Fed. R. Civ. P.4(e)(1). "In New York, a process server's affidavit of service constitutes prima facie evidence of proper service." *High Farms, LLC v. King,* No. 16-CV-736 (NGG) (PK), 2019 U.S. Dist. LEXIS 42078, at *5 (E.D.N.Y. Mar. 13, 2019) (internal citation omitted).

Therefore, it is clear that service of process was properly effectuated upon the Defendant pursuant to Fed. R. Bankr. P. 7004. (a)1 and Fed. R. Civ. P. 4(e)(1).

Hence, the Defendant was properly served with the Summons and Complaint.

c. **Proof of Default**

As stated *supra*, service was completed upon Defendant on March 17, 2020. *See:* The

Summons and Notice of Pretrial Conf. in an Adversary Proc. ECF Doc. No. 2. The answer was due on April 13, 2020. *Id.* Additionally, the summonses noted that the Bankruptcy Court would hold a conference on April 24, 2020. *Id.* Defendant appeared on the conference and asked for extension (first until May 12, and then until May 29, 2020). ECF Doc. No. 6-7. The Court granted the extension until June 1, 2020, however, Defendant failed to plead. The relevant period for Defendant to file a responsive pleading with respect to Plaintiff's Verified Complaint has long-since elapsed. As a result, on June 23, 2020, the Court upon Plaintiffs' request, entered a notice of default.

### d.  Liability

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. Fed. R. Civ. P. 8(b)(6). "Default is an admission of all well-pleaded allegations against the defaulting party." *Merch. Cash & Capital LLC v. Edgewood Grp., LLC,* No. 14cv03497 (JGK) (DF), 2015 U.S. Dist. LEXIS 94162, at *17 (S.D.N.Y. July 2, 2015) (initial citation omitted).

It is true, that "a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading." *BH99 Realty, LLC v. Qian Wen Li,* No. 10-CV-0693 (FB) (JO), 2011 U.S. Dist. LEXIS 51621, at *10 (E.D.N.Y. Mar. 16, 2011). It remains the plaintiff's burden to demonstrate that "those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Id.*

In the instant matter, Plaintiffs have satisfied this requirement through the submission of the Verified Complaint and exhibits which establish that Defendant's acts, omissions, and fraudulent misrepresentations to the Plaintiffs, directly led to Emigrant Bank commencing a foreclosure action seeking foreclosure on both the Manhattan Property and the Benson Property,

and subsequently, to entry of a final Judgement of Foreclosure and Sale entitling Emigrant to sell both properties via public auction.

To establish a fraud claim under New York law,  a plaintiff must show  that  (1)  the defendant mad a material misrepresentation; (2) the defendant knew of its falsity; (3) the defendant possessed an intent to defraud; (4) the defendant reasonably relied on the misrepresentation; and (5) the plaintiff suffered damage as a result of the misrepresentation. *De Vos v. Lee,* No. 07-CV-804 (RLM), 2009 U.S. Dist. LEXIS 134541, at *52 (E.D.N.Y. Dec. 22, 2009).

Each of these requisite elements have been satisfied here.

The Defendant made a material misrepresentation - Defendant falsely represented to Plaintiffs that: (1) the durable powers of attorney, dated April 30, 2008, would only be used for the express and limited purpose of refinancing the Benson Property for Plaintiffs and for no other purposes; (2) that he would defend Plaintiffs in the Foreclosure Action to prevent the unjust foreclosure of Plaintiffs' home; and (3) that he had, in fact, filed an "Answer" on Plaintiffs' behalf in the Foreclosure Action.

The Defendant knew of its falsity - Defendant, at all times relevant times, knew that these representations were false. Specifically, Defendant knew or should have known that: (1) the durable power(s) of attorney explicitly state that the same were limited for the express purpose of refinancing the Benson Property and nothing else; (2) that Plaintiffs never agreed to appoint Defendant as their "attorney-in-fact" for anything related to the Manhattan Property; (3) that Plaintiffs never agreed, or would have agreed, to pledge the Benson Property as collateral for the Defendant's mortgage loan with Emigrant; and (4) that Defendant completely and utterly failed to respond to the Summons and Complaint in the Foreclosure Action on behalf of Plaintiffs, and did not appear in court for any settlement conferences.

The Defendant possessed an intent to defraud - Defendant's misrepresentations were intentional and/or made with reckless disregard as to whether the same were true. Defendant was a well-known and respected real estate attorney at the relevant times and son of the Plaintiffs. He knew that his parent elderly Italian American immigrants spoke very little English, that they trusted him as a son and a lawyer. He knew that his parents never agreed to appoint him as their "attorney-in-fact" for anything related to the Manhattan Property. He knew that the Plaintiffs never would have agreed, to pledge the Benson Property as collateral for the Defendant's mortgage loan with Emigrant. Yet, he intentionally and deceptively misrepresented Plaintiffs with all aspect regarding their property.

The Plaintiffs reasonably relied on the misrepresentation - Plaintiffs' reliance on Defendant's misrepresentations was reasonable in light of the relationship that existed between Plaintiffs and Defendant. Defendant is not only Plaintiffs' son, but also was a well-known and respected real estate attorney at the relevant times.

e.   **Damages**

The Plaintiffs suffered damage as a result of the misrepresentation – as a result of the Defendant's criminal and fraudulent behavior, Plaintiffs have been left in the extremely disadvantageous and unfortunate position of their home being in impending danger of being wrongfully sold.

Under New York law, to prove damages in a fraud action a plaintiff must demonstrate that the defendant's conduct proximately caused her economic harm. *Kaye v. Grossman,* 202 F.3d 611, 614 (2d Cir. 2000) (internal citation omitted). Plaintiff must demonstrate that the defendant's conduct proximately caused her economic harm. … [T]he plaintiff must have suffered losses as a direct, immediate, and proximate result of the defendant's

misrepresentation." *Manney v. Reichert,* No. 13 CV 4413 (SJF)(GRB), 2014 U.S. Dist. LEXIS 43996, at *29-30 (E.D.N.Y. Mar. 28, 2014) (internal citation omitted) An injury is proximately caused by the fraud if it is a natural or probable consequence of the defrauder's misrepresentation or if the defrauder ought reasonably to have foreseen that the injury was a likely consequence of the fraud." *Id*.

In the instant matter, it is clear that the Plaintiff suffered damages as a direct, immediate, and proximate result of the misrepresentation. Plaintiffs' reliance on Defendant's misrepresentations was to their detriment and as a natural or probable consequence of this fraud. Plaintiffs never agreed to appoint Defendant as their "attorney-in fact" for anything related to the Manhattan Property and Plaintiffs would have never agreed to pledge the Benson Property as collateral for the Defendant's mortgage loan with Emigrant. Plaintiffs have suffered, and continue to suffer damages, including monetary damages in an amount to be determined at inquest, emotional distress, as well as the imminent loss of the Benson Property via a foreclosure auction.

In addition, Plaintiffs should be awarded punitive damages as result of Defendant's fraudulent conduct. The imposition of punitive damages is discretionary with the finder of fact. Where a party has defaulted on a common law fraud claim, an award of punitive damages is permissible. *Tosto v. Zelaya,* 2003 U.S. Dist. LEXIS 8085, at *1 (S.D.N.Y. May 12, 2003), *Flaks v. Koegel,* 504 F.2d 702, 706 (2d Cir. 1974).

Punitive damages for fraud are recoverable only where the fraud, aimed at the public generally, is gross and involves high moral culpability. *Carling v. Peters,* 2013 U.S. Dist. LEXIS 42038, at * 22-23 (S.D.N.Y. Feb. 6, 2013).

Although a fraud aimed at the public in general may not be an essential prerequisite of exemplary damages, still there must be allegations of "gross, wanton, or willful fraud or other

morally culpable conduct to a degree sufficient to justify an award of punitive damages." *KIRSCH BEVERAGES, INC. v. EMHART Corp.,* 1978 U.S. Dist. LEXIS 13906, at *8 (S.D.N.Y. Dec. 11, 1978) (initial citation omitted).

Here, Defendant was a well-known and respected real estate attorney at the relevant times, who used his knowledge and power to defraud his own parents. As a result of his willful acts and omissions, his parents are risking losing their home, where Plaintiffs raised their three children and planned to spend the rest of their golden years. Clearly, Defendant's actions amount to morally culpable conduct to a degree sufficient to justify an award of punitive damages. Therefore, Plaintiffs should be awarded compensatory and punitive damages.

Accordingly, Plaintiffs have established all of the requisite elements necessary for the entry of a default judgment in their favor.

## <u>CONCLUSION</u>

**WHEREFORE**, Plaintiffs respectfully requests an Order from this Court as follows:

a)  Directing entry of a default judgment against Defendant Luigi Rosabianca; and

b)  Scheduling an inquest for this matter on the next available date; and/or

c)  Awarding Plaintiffs compensatory and punitive damages; and/or

d)  Awarding Plaintiffs all costs, disbursement, and reasonable attorney fees allowed by law;

and/or

e)  Granting Plaintiffs any such further this Court may deem just and proper.

Dated: September 21, 2020
      Brooklyn, New York

**PETROFF AMSHEN LLP**

By:    <u>*/s/ Steven Amshen*</u>
      Steven Amshen, Esq.
      1795 Coney Island Avenue, Third Floor
      Brooklyn, New York 11230
      (718) 336-4200
      samshen@lawpetroff.com
      *Attorneys for Carmelo Rosabianca &*
      *Vivien Rosabianca*